1  DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
2  HERSHENSON ROSENBERG-WOHL,
   A PROFESSIONAL CORPORATION
3  3080 Washington St.
   San Francisco, CA 94115
4  (415) 317-7756
   david@hrw-law.com
5

6

7              **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11  LT, A MINOR, BY AND THROUGH THEIR      Case No.:
    NEXT FRIEND/GUARDIAN AD LITEM, MT,
12  AND MT, ON MT'S OWN BEHALF,

13                  Plaintiffs,           **COMPLAINT**    3:25-CV-4818
    vs.
14
    TAMALPAIS UNION HIGH SCHOOL
15  DISTRICT, JESSICA CRABTREE, AND
    DOES 1-10,
16
                  Defendants.
17

18

19      This lawsuit arises from the District's refusal, after recognizing LT's Section 504

20  eligibility, to retroactively apply extended-time accommodations on already-administered

21  Honors Pre-Calculus exams. By locking in an unfair C+/B- grade immediately before junior-year

22  placement decisions, Defendants have irreparably harmed LT's academic trajectory. The final

23  exam is this Tuesday, June 10, 2025. Unless this Court intervenes immediately, halting LT's

24  course grade calculation pending the supplemental Section 504 meeting sought by Plaintiffs and

25  rejected by District, LT will go into the final exam with heightened anxiety, exacerbating the

26

27  well documented disabilities LT has that support the Section 504 relief itself, and likely to do far

28

COMPLAINT - 1

worse on the exam than he is capable of and that his classmates who do not suffer from disabilities will do. This damage to LT's confidence and mathematical abilities cannot be undone.

Nor can it be remedied after the fact by court-ordered grade adjustment. This is not about the resulting grade itself but about the wellbeing of an assiduous student able to perform at an A level but being held back by a teacher and her District. *LT is entitled to the chance to earn the honors/AP-Calculus track for fall 2025, not fight for it in a lawsuit.*

**JURISDICTION AND VENUE**

1.  The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claims arising under the Constitution and laws of the United States. The Court has supplemental jurisdiction over Plaintiffs' State law claims because they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

2.  The Court has authority to issue the declaratory relief sought under 28 U.S.C. §§ 2201 and 2202.

3.  Venue lies in this district under 28 U.S.C. § 1391(b), including because (i) at least one defendant resides in the Northern District of California and all defendants reside in the State of California, and (ii) a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California.

**THE PARTIES**

<u>Plaintiffs</u>

4.  Plaintiff LT is a student at Redwood High School, within the Tamalpais Union High School District, in Larkspur California. At the time of the events alleged herein, LT has

been and continues to be in the second semester of an Honors Pre-Calculus class taught by Defendant Jessica Crabtree.

5. Plaintiff MT is LT's parent. MT resides with their child LT in a community served by Redwood High School.  They are residents of this judicial district.

6. Defendant Tamalpais Union High School District ("the District") is comprised of three high schools and two alternative programs. Redwood High School is one of those high schools. It is a public high school district serving many of the communities in southern Marin County, California and is located in this judicial district.

7. Defendant Jessica Crabtree ("Crabtree") was, at all relevant times, the teacher of LT's precalculus class at Redwood High School. On information and belief she resides in this judicial district.

**FACTUAL BACKGROUND**

8. LT is an accomplished student, including in mathematics.

9. LT nonetheless has certain disabilities that can, if not reasonably accommodated, impair their ability to perform at their best: these include

   a.  Attention-deficit/hyperactivity disorder

   b.  Persistent depressive disorder (dysthymia)

   c.  Generalized anxiety disorder, and

   d.  Autism spectrum disorder.

10. These disabilities were all diagnosed in advance of the present school year, 2024-25.

11. LT manifest these disabilities to Crabtree in their first semester of precalculus.

12. LT's health care practitioners submitted these diagnoses to personnel at Redwood High School and the District in February and March of 2025.

COMPLAINT - 3

13. The District conducted a "Section 504 Meeting" on March 18, 2025. The document summarizing the results of that meeting reflects that the data was already entered as of March 14, 2025.

14. The "Purpose of Meeting" was to assess "Eligibility" only, not any "504 Plan."

15. The Section 504 Meeting was attended by MT and LT, along with Dr. Luke Moix, LT's sometime treating and present prescribing child, adolescent and adult psychiatrist. Rebecca Vester, the Section 504 Coordinator of Redwood High School convened the meeting. Crabtree was also in attendance.

16. The document reflects that LT's treating physician, Dr. Bronzo, as well as Dr. Moix, explained that LT's disabilities adversely affected their abilities to explain their reasoning on math problems, and that therefore tests do not regularly show their work or thought processes.

17. The document does not mention the neuropsychological evaluation submitted by Whitney N. Geller, Ph.D. and Dylan Stewart, Psy.D. The section "Review of Private Evaluation" lists simply the Bronzo letter. It omits the Geller/Stewart letter and it omits the Moix testimony at the meeting itself.

18. The document does not mention the presence of Dr. Moix at the meeting.

19. The document does not mention that LT's psychological health care experts not only advised the District as to LT's disabilities but specifically recommended extended time on exams: 1.5x and unlimited when appropriate.

20. Crabtree referenced what LT's physicians had specified as a disability, namely LT's ability to show work on the way to a right answer: she stated "[LT is inconsistent with

showing [their] work/process in problem solving." Crabtree referenced LT's frustration with her grading of their exams.

21. Crabtree stated, without reference to any health care practitioners' advice, that LT did not need any accommodations.

22. Crabtree's sole basis for stating LT did not need accommodations was that LT was "succeeding at a high level in a rigorous honors course."

23. The result of the 504 assessment was that LT had a physical or psychological impairment under section 504 regulations, that they affected major life activities, and that they limited major life activities, but that LT did not need section 504 services in order for their educational needs to be met as adequately as those of non-disabled peers.

24. In the summary, the report stated that LT was "eligible under Section 504" and that LT "will receive a Service Plan which governs the provision of Section 504 services to the student."

25. The Service Plan identified LT's diagnoses but stated "The student does not qualify for accommodations at this time as there is not evidence that [their] disabilities prevent [them] from accessing learning."

26. Vester confirmed on March 26, 2025 that no 504 services would be provided, echoing the comments of Crabtree: "[LT] is doing exceptionally well, succeeding with highly challenging course …".

27. The assessments by Crabtree and Vester were substantially inaccurate, especially regarding Crabtree's Pre-Calculus course, which was the subject of the 504 meeting.

28. Crabtree's Honors Pre-Calculus course, according to its grading rubric, is graded based almost exclusively upon 10 exams. 90% of the grade comes from these exams, while

10% comes from a combination of homework and classwork. 11 exams are given (the final consists of exams 10 and 11), and the lowest scored exam of the 11 is excluded.

29. At the time of the 504 meeting, on March 18, these were LT's grades on exams (second semester, 2025):

    a.  Exam 1, 1/16-17    97.5/100

    b.  Exam 2, 1/30-31    75/100

    c.  Exam 3, 2/13-14    94/100

    d.  Exam 4, 2/27-28    35/100

30. The average of these graded exams is 75.4, which according to Crabtree's grading scale (per the District's grading scale) is a "C." That is not "succeeding at a high level" (Crabtree) or "doing exceptionally well" (Vester).

31. MT did not agree with the result of the meeting and challenged it. MT wrote emails to Vester, as well as to others at the high school and the District. Those were considered to be an appeal of the 504 determination, a grading challenge to Crabtree, and a complaint under California's Uniform Complaint Procedure focused upon retaliation. At least one of these emails was cc'd to the Board of Trustees.

32. On May 20, 2025, two months following its denial of accommodations, the District wrote that it would "amend" LT's 504 plan to allow 1.5x extended time on exams.

33. The reversal was based upon no new information provided to the District. Nor was it in good faith, in that the plan was not communicated to Crabtree nor otherwise coordinated with her to assure LT's accommodations. It was simply a defensive posture taken with an eye toward possible future litigation.

34.  In between March 18 and May 20, three additional exams had been graded by Crabtree without accommodations:

    a.   Exam 5, 3/13-14       90/100

    b.   Exam 6, 4/3-4          81.7/100

    c.   Exam 7, 4/24-5        84/100

35. Another exam, Exam 8, had been administered on 5/12, also without accommodations, but had yet to be graded.

36. Accommodations were first provided as of Exam 9, 5/22-23. All that remained at that point was the final, consisting of Exams 10 and 11.

37. On 6/3, less than a week before the final exam, LT obtained their grade on LT's first test with accommodations – 92/100. For the first time on the precalculus exams, LT reported that they had the time to complete the test and double-check their work.

38. The final two exams are to be administered this coming Monday 6/9.

39. It is, of course, not possible to determine in advance what LT's grades will be on the final, Exams 10 and 11. And it is too soon to tell that LT's success vis-à-vis Test 9 means that on Tests 10 and 11 LT will have time needed to complete the tests and double-check the work.

40. Given the 90/10 grading rubric for the course, even if LT obtained 92/100 on Exams 10 and 11, such that the grade on tests with accommodation remained constant and relatively high at 92/100 (i.e., 276/300), the prior exams (even accounting for dropping the worst one) would themselves drag what should be a solid "A" grade (92/100) down to a "B" grade (87.8).

41. By contrast, LT's grades in homework/classwork average a solid "A" (287.5/300 = 95.8).

42. Without accommodations to the grading scale itself, the 90% of the course grade comprised of the exams (most at 1x and three at 1.5x) would diminish the B to a C+, i.e., .9 x 87.8, or 79.02. Adding to that the 10% of the course grade from the homework/classwork would be .1 x 96, or .96. The homework/classwork, while a solid "A" grade, is not weighted enough to move the C+ grade: the course grade remains a C+ (at 79.98)

43. Under these circumstances, the fairest way to grade LT for precalculus second semester, according to Dr. Moix, is to base the course grade completely on the homework, because as untimed work throughout the class, the "A" grade maintained consistently throughout the semester is the most accurate representation of LT's knowledge in the course. Exams 9-11, those given with accommodation, but under an excessive burden, given the importance of the exams to the grade) should count only if they boost LT's grade further.

44. Alternatively, the grading rubric of the course should be modified for LT by (1) counting as exams only those administered with extra time, and (2) because these exams cover only part of the year and have been taken under conditions artificially suppressing LT's confidence in their abilities (no grading of such exams ever having taken place until two days ago), that these accommodation-provided exams be steeply discounted vis-à-vis their homework and classwork grades, such that the grading rubric of the course be 80% homework/classwork, 20% accommodation-provided exams, specifically 5% for Test 9 and 15% for the Final.

45. In short, operating at the best of LT's abilities, which is at the level tested for all of LT's classmates without disabilities, LT has regularly demonstrated an "A" level of comprehension of the material.

46. In fact, next year LT moves on to AP Calculus, either AB or BC (the harder course, in which AB comprises the first semester). According to LT's tutor, LT "has a better number sense and better mathematical intuitions than do most people who excel in BC."

47. Without the relief requested here, namely modification of the grading rubric in Crabtree's precalculus class, LT will most likely end up with a grade of "C+" in that class when the grade he actually deserves is an "A."

48. Immediate relief is warranted. This complaint is being filed Friday, June 6. The final exams are being administered this coming Monday, June 10. Given the standard course grading rubric, the course grade can (and is likely to be calculated by Crabtree) immediately upon calculating the final exam grades. That could be as soon as Tuesday, June 10.

49. Seeking court relief was not the first choice of plaintiffs.

50. MT reached out to the Board of Trustees, asking to present the case for modifications at a Board meeting scheduled for June 3. The Board president said MT could not make a presentation at that meeting.

51. MT reached out to Redwood High School and the District seeking an expedited supplemental 504 meeting yesterday, June 5. That request was denied too.

52. The final exam is this coming Tuesday, June 10, and so is the course grade.

53. LT's confidence in their mathematical abilities has been challenged repeatedly this semester. Homework and classwork have regularly suggested mastery of the material, but exams suggest a significant gap in understanding. This has been exacerbated by LT's disability in demonstrating their thought process and Crabtree's refusal to document on the graded exams exactly where the problems are and what to prioritize.

COMPLAINT - 9

54. LT deserves to go into the final exam on June 10 with the confidence that their knowledge is solid and that they are not burdened by needing to do *extraordinarily* well on the final exams in order to succeed not just on the exams but in the course itself – something they cannot do under the standard course rubric that, for LT, is heavily weighted down by pre-accommodation exam results.

**FIRST CAUSE OF ACTION:**

**Section 504 of Rehabilitation Act, 29 USC 794; 34 CFR 104.4; 34 CFR 104.35 vs. District**

55. Plaintiffs incorporate by reference allegations 1-54 herein.

56. LT is entitled to the protection for those with disabilities under the Rehabilitation Act.

57. LT has psychological impairments that substantially limit LT's ability to learn, read, concentrate, think, communicate and work, most specifically on timed exams.

58. LT has at all relevant times in this complaint been a student at Redwood High School in the District, most specifically enrolled in Crabtree's precalculus class. The District and Redwood High School regularly receive federal financial assistance through the State of California.

59. LT was denied the benefits of exams testing, confirming and educating LT about precalculus competence and mastery that were provided to LT's classmates. As a result, the District discriminated against LT on the basis of LT's disabilities, in particular:

    a.   by depriving LT of the time needed to complete and proofread exams

    b.   by grading LT's exams down (including severely) even when the answers were correct simply because LT did not show work

c.  by depriving LT of feedback (written or oral) so LT could understand what of the work LT needed to show or prioritize in a given time

d.  by denying that LT's disabilities were real

e.  by asserting LT deliberately performed poorly on tests

f.  by asserting LT cheated on tests

g.  by exacerbating LT's disabilities by impairing LT's confidence

h.  by refusing to grade exams promptly, in advance of the next exam

i.  by comparing LT's performance not to LT's own abilities but to those of other classmates

j.  by comparing LT's disabilities favorably to those of Crabtree's own children

k.  by refusing to consider making any accommodations throughout the year even where difficulties and disabilities were patent

l.  by refusing to consider with an open mind professional opinions as to LT's disabilities when presented later in the year

m.  by refusing to engage with LT's parent MT in good faith

n.  refusing to schedule a supplemental 504 meeting in advance of the final exam and the course grade

o.  by refusing to modify the course rubric assigning 90% of the grade to exams and 10% to homework

    i.  where most of the exams had been administered without accommodation and so were not an accurate reflection of LT's course knowledge

    ii.  where even if the exams with accommodation were the sole exams to count under the 90%, any course grade so generated would ignore LT's

superior performance on the (untimed) homework and would discriminatorily sink LT's grade in the course.

60.    The conduct of Crabtree and those responsible, directly or indirectly for the 504 process, demonstrates intentional conduct, as well as deliberate indifference. Among other allegations, the District and Crabtree have consciously (but erroneously) chosen to evaluate LT's disabilities against other students as opposed to LT's own abilities, which is in violation of law. More, the District and Crabtree have amply demonstrated deliberate indifference, including misstating a C performance to date as effectively an A performance, prejudging that no accommodations were warranted, conducting the 504 process in a desultory manner, ignoring professional advice of three experts regarding accommodations submitted in writing and in person by Dr. Moix, denying timely accommodations and modifications, including ignoring the effect of failing to make such modifications upon LT's grade. More, the District and Crabtree knowingly ignored the consequence to LT of potentially receiving a grade below a B- in the Honors Pre-Calculus course, which would presumptively preclude LT from enrolling in AP BC Calculus the following year, something both the District and Crabtree had reason to know would be something desired by LT.

61.    Both LT and MT have incurred considerable emotional distress due to the action and in action of Crabtree and the District. Plaintiffs have been damaged as a result, LT with respect to anxiety over the ability to learn precalculus and MT with respect to parental anxiety over the progress and psychological health of LT.

62.    More, MT fears that LT's confidence in math and the course of their academic future, otherwise bright, will be set back and affected negatively in unknown ways due to

the continuing unfair treatment LT has received, such that immediate relief to correct

LT's academic trajectory in this course is warranted.

**SECOND CAUSE OF ACTION:**

**Title II of the ADA, 42 USC 12132, 28 CFR 35, 35 130(b)(7)**

**vs. District**

63.     Plaintiffs incorporate by reference allegations 1-62 herein.

64.     LT is entitled to the protection for those with disabilities under the ADA.

65.     LT has psychological impairments that substantially limit LT's ability to learn,

read, concentrate, think, communicate and work, most specifically on timed exams.

66.     LT has at all relevant times in this complaint been a student at Redwood High

School in the District, most specifically enrolled in Crabtree's precalculus class. The

District and Redwood High School regularly receive federal financial assistance through

the State of California.

67.     LT was denied the benefits of exams testing, confirming and educating LT about

precalculus competence and mastery that were provided to LT's classmates. As a result,

the District discriminated against LT on the basis of LT's disabilities, in particular:

      a.     by depriving LT of the time needed to complete and proofread exams

      b.     by grading LT's exams down (including severely) even when the answers

were correct simply because LT did not show work

      c.     by depriving LT of feedback (written or oral) so LT could understand

what of the work LT needed to show or prioritize in a given time

      d.     by denying that LT's disabilities were real

      e.     by asserting LT deliberately performed poorly on tests

f.      by asserting LT cheated on tests

g.      by exacerbating LT's disabilities by impairing LT's confidence

h.      by refusing to grade exams promptly, in advance of the next exam

i.      by comparing LT's performance not to LT's own abilities but to those of other classmates

j.      by comparing LT's disabilities favorably to those of Crabtree's own children

k.      by refusing to consider making any accommodations throughout the year even where difficulties and disabilities were patent

l.      by refusing to consider with an open mind professional opinions as to LT's disabilities when presented later in the year

m.      by refusing to engage with LT's parent MT in good faith

n.      refusing to schedule a supplemental 504 meeting in advance of the final exam and the course grade

o.      by refusing to modify the course rubric assigning 90% of the grade to exams and 10% to homework

      i.where most of the exams had been administered without accommodation and so were not an accurate reflection of LT's course knowledge

      ii.where even if the exams with accommodation were the sole exams to count under the 90%, any course grade so generated would ignore LT's superior performance on the (untimed) homework and would discriminatorily sink LT's grade in the course.

68.     The conduct of Crabtree and those responsible, directly or indirectly for the 504 process, demonstrates intentional conduct, as well as deliberate indifference. Among other allegations, the District and Crabtree have consciously (but erroneously) chosen to evaluate LT's disabilities against other students as opposed to LT's own abilities, which is in violation of law. More, the District and Crabtree have amply demonstrated deliberate indifference, including misstating a C performance to date as effectively an A performance, prejudging that no accommodations were warranted, conducting the 504 process in a desultory manner, ignoring professional advice of three experts regarding accommodations submitted in writing and in person by Dr. Moix, denying timely accommodations and modifications, including ignoring the effect of failing to make such modifications upon LT's grade. More, the District and Crabtree knowingly ignored the consequence to LT of potentially receiving a grade below a B- in the Honors Pre-Calculus course, which would presumptively preclude LT from enrolling in AP BC Calculus the following year, something both the District and Crabtree had reason to know would be something desired by LT.

69.     Both LT and MT have incurred considerable emotional distress due to the action and in action of Crabtree and the District. Plaintiffs have been damaged as a result, LT with respect to anxiety over the ability to learn precalculus and MT with respect to parental anxiety over the progress and psychological health of LT.

70.     More, MT fears that LT's confidence in math and the course of their academic future, otherwise bright, will be set back and affected negatively in unknown ways due to the continuing unfair treatment LT has received, such that immediate relief to correct LT's academic trajectory in this course is warranted.

**THIRD CAUSE OF ACTION:**

**Cal. Govt. Code section 11135**

**vs. District**

71.    Plaintiffs incorporate by reference allegations 1-70 herein.

72.    LT is entitled to the protection for those with disabilities under Cal. Govt. Code section 11135. LT was "unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

73.    LT has psychological impairments that substantially limit LT's ability to learn, read, concentrate, think, communicate and work, most specifically on timed exams.

74.    LT has at all relevant times in this complaint been a student at Redwood High School in the District, most specifically enrolled in Crabtree's precalculus class. The District and Redwood High School regularly receive state financial assistance through the State of California.

75.    LT was denied the benefits of exams testing, confirming and educating LT about precalculus competence and mastery that were provided to LT's classmates. As a result, the District discriminated against LT on the basis of LT's disabilities, in particular:

    a.    by depriving LT of the time needed to complete and proofread exams

    b.    by grading LT's exams down (including severely) even when the answers were correct simply because LT did not show work

    c.    by depriving LT of feedback (written or oral) so LT could understand what of the work LT needed to show or prioritize in a given time

d.      by denying that LT's disabilities were real

e.      by asserting LT deliberately performed poorly on tests

f.      by asserting LT cheated on tests

g.      by exacerbating LT's disabilities by impairing LT's confidence

h.      by refusing to grade exams promptly, in advance of the next exam

i.      by comparing LT's performance not to LT's own abilities but to those of
other classmates

j.      by comparing LT's disabilities favorably to those of Crabtree's own
children

k.      by refusing to consider making any accommodations throughout the year
even where difficulties and disabilities were patent

l.      by refusing to consider with an open mind professional opinions as to
LT's disabilities when presented later in the year

m.      by refusing to engage with LT's parent MT in good faith

n.      refusing to schedule a supplemental 504 meeting in advance of the final
exam and the course grade

o.      by refusing to modify the course rubric assigning 90% of the grade to
exams and 10% to homework

        i. where most of the exams had been administered without accommodation
            and so were not an accurate reflection of LT's course knowledge

        ii. where even if the exams with accommodation were the sole exams to
            count under the 90%, any course grade so generated would ignore LT's

superior performance on the (untimed) homework and would

discriminatorily sink LT's grade in the course.

76.     The conduct of Crabtree and those responsible, directly or indirectly for the 504

process, demonstrates intentional conduct, as well as deliberate indifference. Among

other allegations, the District and Crabtree have consciously (but erroneously) chosen to

evaluate LT's disabilities against other students as opposed to LT's own abilities, which

is in violation of law. More, the District and Crabtree have amply demonstrated

deliberate indifference, including misstating a C performance to date as effectively an A

performance, prejudging that no accommodations were warranted, conducting the 504

process in a desultory manner, ignoring professional advice of three experts regarding

accommodations submitted in writing and in person by Dr. Moix, denying timely

accommodations and modifications, including ignoring the effect of failing to make such

modifications upon LT's grade. More, the District and Crabtree knowingly ignored the

consequence to LT of potentially receiving a grade below a B- in the Honors Pre-

Calculus course, which would presumptively preclude LT from enrolling in AP BC

Calculus the following year, something both the District and Crabtree had reason to know

would be something desired by LT.

77.     Both LT and MT have incurred considerable emotional distress due to the action

and in action of Crabtree and the District. Plaintiffs have been damaged as a result, LT

with respect to anxiety over the ability to learn precalculus and MT with respect to

parental anxiety over the progress and psychological health of LT.

78.     More, MT fears that LT's confidence in math and the course of their academic

future, otherwise bright, will be set back and affected negatively in unknown ways due to

the continuing unfair treatment LT has received, such that immediate relief to correct

LT's academic trajectory in this course is warranted.

**FOURTH CAUSE OF ACTION:**

**Cal. Civ. Code section 54 (DPA)**

**vs. District**

79.    Plaintiffs incorporate by reference allegations 1-78 herein.

80.    LT is entitled to the protection for those with disabilities under Cal. Civil Code

section 54 (DPA).

81.    Under the DPA "[i]ndividuals with disabilities shall be entitled to full and equal

access, as other members of the general public, to accommodations, advantages,

facilities, ... places of public accommodation, amusement, or resort, and other places to

which the general public is invited...." CAL. CIV. CODE § 54.1.

82.    The DPA imposes no substantive standards of its own but rather requires

compliance with existing applicable federal ADA regulations.

83.    LT has psychological impairments that substantially limit LT's ability to learn,

read, concentrate, think, communicate and work, most specifically on timed exams.

84.    LT has at all relevant times in this complaint been a student at Redwood High

School in the District, most specifically enrolled in Crabtree's precalculus class. The

District and Redwood High School regularly receive state financial assistance through the

State of California.

85.    LT was denied the benefits of exams testing, confirming and educating LT about

precalculus competence and mastery that were provided to LT's classmates. As a result,

the District discriminated against LT on the basis of LT's disabilities, in particular:

COMPLAINT - 19

a.      by depriving LT of the time needed to complete and proofread exams

b.      by grading LT's exams down (including severely) even when the answers were correct simply because LT did not show work

c.      by depriving LT of feedback (written or oral) so LT could understand what of the work LT needed to show or prioritize in a given time

d.      by denying that LT's disabilities were real

e.      by asserting LT deliberately performed poorly on tests

f.      by asserting LT cheated on tests

g.      by exacerbating LT's disabilities by impairing LT's confidence

h.      by refusing to grade exams promptly, in advance of the next exam

i.      by comparing LT's performance not to LT's own abilities but to those of other classmates

j.      by comparing LT's disabilities favorably to those of Crabtree's own children

k.      by refusing to consider making any accommodations throughout the year even where difficulties and disabilities were patent

l.      by refusing to consider with an open mind professional opinions as to LT's disabilities when presented later in the year

m.      by refusing to engage with LT's parent MT in good faith

n.      refusing to schedule a supplemental 504 meeting in advance of the final exam and the course grade

o.      by refusing to modify the course rubric assigning 90% of the grade to exams and 10% to homework

COMPLAINT - 20

i.where most of the exams had been administered without accommodation and so were not an accurate reflection of LT's course knowledge

ii.where even if the exams with accommodation were the sole exams to count under the 90%, any course grade so generated would ignore LT's superior performance on the (untimed) homework and would discriminatorily sink LT's grade in the course.

86.    The conduct of Crabtree and those responsible, directly or indirectly for the 504 process, demonstrates intentional conduct, as well as deliberate indifference. Among other allegations, the District and Crabtree have consciously (but erroneously) chosen to evaluate LT's disabilities against other students as opposed to LT's own abilities, which is in violation of law. More, the District and Crabtree have amply demonstrated deliberate indifference, including misstating a C performance to date as effectively an A performance, prejudging that no accommodations were warranted, conducting the 504 process in a desultory manner, ignoring professional advice of three experts regarding accommodations submitted in writing and in person by Dr. Moix, denying timely accommodations and modifications, including ignoring the effect of failing to make such modifications upon LT's grade. More, the District and Crabtree knowingly ignored the consequence to LT of potentially receiving a grade below a B- in the Honors Pre-Calculus course, which would presumptively preclude LT from enrolling in AP BC Calculus the following year, something both the District and Crabtree had reason to know would be something desired by LT.

87.    Both LT and MT have incurred considerable emotional distress due to the action and in action of Crabtree and the District. Plaintiffs have been damaged as a result, LT

with respect to anxiety over the ability to learn precalculus and MT with respect to parental anxiety over the progress and psychological health of LT.

88.     More, MT fears that LT's confidence in math and the course of their academic future, otherwise bright, will be set back and affected negatively in unknown ways due to the continuing unfair treatment LT has received, such that immediate relief to correct LT's academic trajectory in this course is warranted.

**FIFTH CAUSE OF ACTION:**

**Cal. Civ. Code section 51 (Unruh Civil Rights)**

**vs. District**

89.     Plaintiffs incorporate by reference allegations 1-88 herein.

90.     LT is entitled to the protection for those with disabilities under Cal. Civil Code section 51 (Unruh Civil Rights Act).

91.     The Unruh Act guarantees all persons in California, regardless of sex or disability, "the full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever." Cal. Civ. Code § 51(b).

92.     The Act also states that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall constitute a violation of this section." Cal. Civ. Code § 51(f).

93.     LT has psychological impairments that substantially limit LT's ability to learn, read, concentrate, think, communicate and work, most specifically on timed exams.

94.     LT has at all relevant times in this complaint been a student at Redwood High School in the District, most specifically enrolled in Crabtree's precalculus class. The

District and Redwood High School regularly receive state financial assistance through the State of California.

95.    LT was denied the benefits of exams testing, confirming and educating LT about precalculus competence and mastery that were provided to LT's classmates. As a result, the District discriminated against LT on the basis of LT's disabilities, in particular:

a.    by depriving LT of the time needed to complete and proofread exams

b.    by grading LT's exams down (including severely) even when the answers were correct simply because LT did not show work

c.    by depriving LT of feedback (written or oral) so LT could understand what of the work LT needed to show or prioritize in a given time

d.    by denying that LT's disabilities were real

e.    by asserting LT deliberately performed poorly on tests

f.    by asserting LT cheated on tests

g.    by exacerbating LT's disabilities by impairing LT's confidence

h.    by refusing to grade exams promptly, in advance of the next exam

i.    by comparing LT's performance not to LT's own abilities but to those of other classmates

j.    by comparing LT's disabilities favorably to those of Crabtree's own children

k.    by refusing to consider making any accommodations throughout the year even where difficulties and disabilities were patent

l.    by refusing to consider with an open mind professional opinions as to LT's disabilities when presented later in the year

m.      by refusing to engage with LT's parent MT in good faith

n.      refusing to schedule a supplemental 504 meeting in advance of the final exam and the course grade

o.      by refusing to modify the course rubric assigning 90% of the grade to exams and 10% to homework

     i. where most of the exams had been administered without accommodation and so were not an accurate reflection of LT's course knowledge

     ii. where even if the exams with accommodation were the sole exams to count under the 90%, any course grade so generated would ignore LT's superior performance on the (untimed) homework and would discriminatorily sink LT's grade in the course.

96.    The conduct of Crabtree and those responsible, directly or indirectly for the 504 process, demonstrates intentional conduct, as well as deliberate indifference. Among other allegations, the District and Crabtree have consciously (but erroneously) chosen to evaluate LT's disabilities against other students as opposed to LT's own abilities, which is in violation of law. More, the District and Crabtree have amply demonstrated deliberate indifference, including misstating a C performance to date as effectively an A performance, prejudging that no accommodations were warranted, conducting the 504 process in a desultory manner, ignoring professional advice regarding accommodations submitted in writing and in person by Dr. Moix, denying timely accommodations and modifications, including ignoring the effect of failing to make such modifications upon LT's grade. More, the District and Crabtree knowingly ignored the consequence to LT of potentially receiving a grade below a B- in the Honors Pre-Calculus course, which would

presumptively preclude LT from enrolling in AP BC Calculus the following year, something both the District and Crabtree had reason to know would be something desired by LT.

97.    Both LT and MT have incurred considerable emotional distress due to the action and in action of Crabtree and the District. Plaintiffs have been damaged as a result, LT with respect to anxiety over the ability to learn precalculus and MT with respect to parental anxiety over the progress and psychological health of LT.

98.    More, MT fears that LT's confidence in math and the course of their academic future, otherwise bright, will be set back and affected negatively in unknown ways due to the continuing unfair treatment LT has received, such that immediate relief to correct LT's academic trajectory in this course is warranted.

**SIXTH CAUSE OF ACTION:**

**Negligence**

**vs. Crabtree**

99.    Plaintiffs incorporate by reference allegations 1-98 herein.

100.    Crabtree, as a public school teacher, had a duty of care to her students, including LT. That duty involves treating each student as an individual and in permitting each to rise to the best of their abilities. It involves not prejudging them, and it involves respecting professional input into their abilities and disabilities which, by definition, is beyond the experience of a nontrained professional.

101.    That duty also involves avoiding discrimination on the basis of disability under California Education Code 220, because Redwood High School and the District are recipients of State aid.

102.    By the action and inaction indicated herein, including failing to recognize, accept and deal with the disabilities of LT, and failing to accommodate it and modify course grading criteria to render LT's opportunities for learning equal to those of LT's classmates, Crabtree breached her duty of care to LT.

103.    This breach of duty has directly interfered with LT's ability to learn from mistakes, learn how best to allocate time on exams, and how best to present knowledge of course material, such that LT's knowledge has been inaccurately represented in exam grades and quite likely the course grade, and LT's confidence in themselves has been impaired.

104.    In consequence, LT has been damaged, emotionally and in terms of confidence in abilities of which they should be rightly proud, given how hard they have worked and how well they can, if appropriately accommodated, demonstrate not just competence but mastery.

105.    In consequence, MT has been damaged, emotionally and in terms of confidence in the role of parent, watching LT suffer and lose confidence in abilities that can and are demonstrated, when appropriate accommodation is provided.

106.    As stated above, the conduct by Crabtree has been intentional and deliberately indifferent. Given the psychological health of a student in her care, knowing how LT presents and knowing what LT's professional psychological health practitioners have testified, the fact that Crabtree denies disabilities, much less accommodations and course grading rubric modification, at no cost to her or her program goals of teaching Honors Pre-Calculus, her conduct is oppressive to LT if not malicious under Cal. Civ. Code section 3294, justifying the imposition of exemplary and/or punitive damages.

**PRAYER FOR RELIEF**

107.    Wherefore, Plaintiffs respectfully request that the Court:

108.    Declare that Defendants have violated each federal and state law identified herein,

109.    Award Plaintiffs compensatory, punitive, and nominal damages, as appropriate;

110.    Award Plaintiffs the costs of this action and reasonable attorneys' fees; and

111.    Award such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

Dated: June 6, 2025

Respectfully submitted,

*David Rosenberg-Wohl*
David M. Rosenberg-Wohl

HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

**VERIFICATION**

I have reviewed the allegations of fact herein. They are true, to the best of my knowledge and I could and would competently testify thereto in a court of law. I attest to the truth of this Verification under penalty of perjury of the laws of the United States of America.

Executed this 6th of June, 2025.

_____/s/_____

MT

COMPLAINT - 27